**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3563
_____

UNITED STATES OF AMERICA

v.

MICHAEL ARRINGTON,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-09-cr-00078-009)
District Judge: Hon. Yvette Kane

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 30, 2013

BEFORE: JORDAN, VANASKIE and COWEN,  Circuit Judges

(Opinion Filed:  July 17, 2013)

_____

OPINION

_____

COWEN, Circuit Judge.

Michael Arrington ("Arrington") appeals a judgment of criminal conviction and

sentence that resulted after a jury trial on drug-related charges.  Arrington argues that the

conviction should be vacated because the Government committed prosecutorial misconduct by failing to correct inconsistent testimony between two witnesses and because the District Court abused its discretion by allowing the Government to admit evidence that Arrington absconded from state parole after federal authorities arrested his co-conspirators. We will affirm.[1]

## I.

Arrington first argues that the Government committed prosecutorial misconduct by failing to correct inconsistent testimony made by two Government witnesses. As Arrington did not raise this at trial, we review for plain error. *See United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003).

At trial, the Government presented evidence that Arrington was a supplier of heroin to several co-conspirators, including Omar Davenport ("Davenport"). Davenport testified that Arrington traveled to his home on a weekly basis to provide him with heroin. Davenport also testified that his girlfriend, Bobbie Sue Miller ("Miller"), assisted him in the drug business and that Miller was frequently in his house when Arrington would deliver heroin, but was "not in the room." (App. 155.) According to Davenport, Miller was "probably in the bedroom", and the drug deliveries took place in the living room. (App. 156.)

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

2

Miller, however, testified that on two occasions, she saw Arrington deliver drugs to Davenport. On one occasion, Miller stated that she "was sitting in the living room" when Arrington arrived and that she saw Davenport give Arrington a bag containing cash. (App. 186.) Miller testified that on another occasion, she saw Arrington deliver a package containing a "block of heroin" to Davenport. (App. 188.)

Arrington argues that the Government committed misconduct by vouching for the contradictory testimony of Davenport and Miller and for failing to correct Miller's alleged perjury at trial.[2] In order to assert a due process violation premised on perjury by a government witness, the defendant must show that (a) the witness committed perjury; (b) the Government knew or should have known of the perjury; (c) the testimony went uncorrected; and (d) there is a reasonable likelihood that the testimony could have affected the verdict. *See United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008).

As a threshold matter, we cannot conclude that Miller committed perjury. "A witness commits perjury if he or she 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Id.* (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). However, even assuming that Arrington can establish that Miller perjured herself, Arrington cannot show that there was a reasonable likelihood that the false testimony could have affected the verdict. Arrington actually used these inconsistencies to his advantage; during his closing argument, Arrington's counsel highlighted these

---

[2] Arrington apparently assumes that Miller's testimony was perjurious and that

3

inconsistencies to the jury in an attempt to diminish Miller's credibility. (App. 362.)[3]

Thus, we conclude that there was no due process violation.[4]

## II.

Arrington next argues that the District Court erred in admitting testimony that Arrington absconded from state parole after federal authorities investigated and arrested his co-conspirators. As Arrington preserved his objection by filing a pre-trial motion to exclude this evidence, we review for abuse of discretion. *See United States v. Kemp*, 500 F.3d 257, 295 (3d Cir. 2007).

In February 2009, federal law enforcement arrested three individuals who were allegedly involved in the drug conspiracy, including Davenport and Miller. After the arrests, Arrington, who was on parole in Pennsylvania, began missing his parole hearings and was declared a fugitive by the Pennsylvania State Board of Parole. More than a year

---

Davenport testified truthfully.

[3] Arrington's counsel stated:

> What did Ms. Miller say? She was in the room, she saw the sale of heroin, she saw it changing hands, she saw money changing hands. What did Mr. Davenport say? She was never in the room. That's what he testified to, she was never in the room when that happened. Ladies and gentlemen, that's not an insignificant detail, either. That's not the kind of thing that memories just vary on because people remember things differently. You remember if you were there where drugs and lots of money were changing hands. Two different stories. Who's telling the truth? The Government wants you believe they were both being truthful in this courtroom.

(App. 362.)

[4] Arrington also alleges that perjury occurred when Miller testified that Davenport threatened to kill her several times and once threatened to cut off her fingers while Davenport denied that these incidents occurred. This inconsistent testimony was also likely favorable to Arrington, as it may have diminished Davenport's credibility, a fact

4

later, Arrington was arrested in Baltimore, Maryland. At the time of arrest, he was using the name Richard Bloomfield.

Prior to trial, the Government gave Arrington notice that it intended to introduce evidence that at the time of the arrest of his alleged co-conspirators, Arrington absconded from parole. Arrington objected, and in a written opinion, the District Court held that the evidence was admissible for the limited purpose of proving Arrington's consciousness of guilt. At trial Arrington's parole officer testified that Arrington was initially a model parolee, but that when his alleged co-conspirators were arrested, he absconded from parole. The parties stipulated that Arrington was arrested in Baltimore and that he was using the name Richard Bloomfield. The District Court provided jury instructions that this evidence could only be used for the limited purpose of deciding whether Arrington had a consciousness of guilt, and could not be used for the improper purpose of concluding that Arrington has bad character or a propensity to commit crimes.

The District Court did not abuse its discretion by admitting this evidence. While the Federal Rules of Evidence do not allow the admission of evidence of an action to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Fed. R. Evid. 404(b)(1), such evidence can be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2). Here, the Government introduced the evidence, not to prove that Arrington

---

that Arrington's counsel emphasized in his closing. (App. 354-55.)

has bad character and acted in accordance with that character, but rather to show that fleeing from parole is evidence of his consciousness of guilt, and the District Court provided clear instructions to the jury about the proper use of this evidence. While the evidence can only be admitted if the probative value of the evidence outweighs any unfair prejudice, *see Huddleston v. United States*, 485 U.S. 681, 691 (1988) (citing Fed. R. Evid. 403), the District Court did not abuse its discretion in concluding that the evidence is more probative than prejudicial.

III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence of the District Court.